**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JON HAMILTON, CODY GEORGE and MARTIN W. KOLODZIRE, on Behalf of Themselves and all Others Similarly Situated,** | § § § § § | |
| **Plaintiffs,** | § § | |
| **V.** | § § | |
| | § | **CIVIL ACTION NO. 5:15-cv-965 -DAE** |
| **ENERSAFE, INC. (f/k/a Enersafe, LLC, TCSafety, Inc.), MICHAEL CHAD CUNNINGHAM, (individually and in his official capacity), JASON ANDERSON, (individually and in his official capacity), RYAN MCMILLAN (individually and in his official capacity), BOBBY BENNETT (individually and in his official capacity), and GRYPHON OIL FIELD SERVICES (a/k/a Gryphon Holdco, LLC & a/k/a and/or f/k/a ENERSAFE, INC.),** | § § § § § § § § § § § § | **COLLECTIVE AND CLASS ACTION** **FILED IN CONSOLIDATED CASE NO. SA-15-CV-965-DAE.** |
| **Defendants.** | § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

Plaintiffs, JON HAMILTON ("Hamilton"), CODY GEORGE ("George") and MARTIN

W. KOLODZIRE ("Kolodzire") (collectively "Plaintiffs"), file this First Amended Complaint

against ENERSAFE, INC. (a/k/a TCSafety and TCSafety Inc. & f/k/a EnerSafe, LLC)

("EnerSafe"), MICHAEL CHAD CUNNINGHAM (individually and in his official capacity)

("Cunningham"), JASON ANDERSON (individually and in his official capacity) ("Anderson"),

RYAN MCMILLAN (individually and in his official capacity) ("McMillan"), BOBBY

BENNET (individually and in his official capacity), and GRYPHON OIL FIELD SERVICES

(a/k/a Gryphon Holdco, LLC and a/k/a and/or f/k/a EnerSafe) ("Gryphon") (collectively

"Defendants"), showing in support as follows:

## I.    <u>SUMMARY</u>

1.      During times relevant, Plaintiffs and the putative collective action members in this lawsuit were employees of EnerSafe, and paid pursuant to W-2s by EnerSafe. Plaintiffs and the putative collective action members provided services, at the direction of EnerSafe, for various customers of EnerSafe relative to oil and/or natural gas exploration and/or production (collectively "oilfield" or "oilfield work").

2.      Plaintiffs and the putative class members regularly work/worked in excess of 40 hours during their workweeks performing work for EnerSafe's customers, but are not/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 for each such workweek by EnerSafe.

3.      After this lawsuit was filed, EnerSafe claimed to cease business operations and its counsel withdrew from representation of EnerSafe in this lawsuit on or about August 24, 2016. EnerSafe claimed that it was essentially in receivership and being operated by a bank. However, some or all of owners and managers of EnerSafe essentially changed the name of EnerSafe to Gryphon, and continued to operate the same business operations as EnerSafe using EnerSafe equipment and assets. Plaintiffs contend that Gryphon is liable, individually and/or jointly with EnerSafe for the damages sought by Plaintiffs and the putative collective action/class action members herein relative to EnerSafe pursuant to Texas law and/or federal employment law principles.

4.      Plaintiffs seek to recover unpaid overtime wages and all available damages under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA") for EnerSafe's failure to pay Plaintiffs time and one-half their respective regular rates of pay for all hours worked over 40 during each seven

day workweek for the time period of three years preceding the date this lawsuit was filed and forward.

5.    Plaintiffs, on behalf of themselves and all others similarly situated, allege that EnerSafe owners, officers and/or managers Cunningham, Anderson, McMillan and Bennett are individually and/or jointly liable for the FLSA damages sought by Plaintiffs and the putative collective action members.

6.    Plaintiffs file their FLSA cause of action individually and on behalf of all others similarly situated as a FLSA collective action pursuant to 29 U.S.C. § 216(b).

7.    Additionally, Plaintiff Hamilton asserts FLSA retaliation claims pursuant to 29 U.S.C. § 215(a)(3) against EnerSafe, Cunningham, Anderson and Bennett. Within one week of Defendants learning that Hamilton had consulted a lawyer and complained about unpaid overtime wages, they terminated his employment in retaliation for same.

## II.    THE PARTIES, JURISDICTION, AND VENUE

### A.    PLAINTIFF JON HAMILTON

8.    Hamilton is an individual who resides in Bandera, Texas. Hamilton worked for Defendants in and around San Antonio, Bexar County, Texas.

### B.    PLAINTIFF CODY GEORGE

9.    George is a natural person who resides in San Antonio, Texas. He has standing to file this lawsuit. George worked for Defendants in and around San Antonio, Bexar County, Texas.

### C.    **PLAINTIFF MARTIN KOLODZIRE**

10.    Kolodzire is a natural person who resides in Seguin, Texas. He has standing to file this lawsuit. Kolodzire worked for Defendants in and around San Antonio, Bexar County, Texas.

### D.    **FLSA OVERTIME COLLECTIVE ACTION MEMBERS**

11.    The FLSA Overtime Collective Action Members are all current and/or former employees of EnerSafe who are similarly situated to Plaintiffs who (a) are/were paid on a salary basis in addition to other remuneration, such as bonuses; (b) had/have primary job duties/titles of oilfield safety technicians, advisors and/or consultants; (c) work/worked more than 40 hours in any workweek; and (d) are/were not paid time and one-half their regular rate of pay for all hours worked over 40 in each such workweek by EnerSafe.

12.    The FLSA Overtime collective action class does not include workers paid by EnerSafe pursuant to 1099s, but only as to time periods they were paid by 1099s.

13.    All of the FLSA Overtime collective action Plaintiffs, opt-in Plaintiffs and putative collective action members are similarly situated to Plaintiffs, and to one another, within the meaning of Section 216(b) of the FLSA.

14.    Plaintiffs reserve the right to refine the definition of the FLSA Overtime collective action class pursuant to amended pleadings, conditional certification/decertification proceedings, or as otherwise allowed by the Court.

### E.    **ENERSAFE, INC. (a/k/a TCSAFETY AND TCSAFETY INC. & f/k/a ENERSAFE, LLC)**

15.    On information and belief, EnerSafe is a corporation incorporated under the laws of the State of Texas.

16.     During all times relevant to this lawsuit, EnerSafe has done business in the State of Texas. Furthermore, EnerSafe employed and continues to employ Plaintiffs and employees in Texas.

17.     On November 1, 2013, or about EnerSafe, LLC converted to EnerSafe, Inc.

18.     On or about January 21, 2014, EnerSafe, Inc. and TCSafety, Inc. merged with EnerSafe being the existing and surviving company.

19.     EnerSafe identifies TCSafety, Inc. and TCSafety as assumed business names of EnerSafe.

20.     EnerSafe's principal office and principal place of business is located at 7700 San Felipe, Suite 490, Houston, Texas 77063.

21.     During the time period relevant to the FLSA cause of action set forth in this lawsuit, EnerSafe is and was an "employer" of Plaintiffs and the putative collective action members pursuant to the FLSA.

22.     At all times relevant to this lawsuit, EnerSafe is and has been an "enterprise engaged in commerce" as defined by the FLSA.

23.     At all times relevant to this lawsuit, EnerSafe employed, and continues to employ, two or more employees who engaged in commerce. For example, EnerSafe has, at all relevant times, had two or more employees engaged in work for other companies who perform interstate oil and natural gas exploration and production services.

24.     At all times relevant to this lawsuit, EnerSafe employed two or more employees who regularly handled and/or worked on goods and/or materials in their daily work that were moved in and/or produced for commerce by other people. Examples of such goods and/or materials include office equipment, such as vehicles, computers, computer related equipment,

and communication devices. Other examples include a wide variety of safety related products, such as hydrogen sulfide gas monitors, gloves, clothing and personal protection equipment, which EnerSafe makes available for purchase to customers and which are handled, sold and shipped, including shipping to location in Texas and states other than Texas, by employees of EnerSafe.

25.    On information and belief, at all times relevant to this lawsuit, EnerSafe has had annual gross sales or business volume in excess of $500,000.

26.    EnerSafe has entered and appearance in this lawsuit.

F.    **DEFENDANT MICHAEL CUNNINGHAM**

27.    Cunningham  is subject to the FLSA individually and is an "Employer" under the FLSA. Cunningham was the President of TCSafety, and is/was been the Executive Vice President of EnerSafe at times relevant to this lawsuit.

28.    Cunningham has/had operational control over the day-to-day business operations of EnerSafe. For example, Cunningham dictates/dictated the operational practices and goals of EnerSafe. Cunningham manages/managed key internal relationships for EnerSafe, including the selection of pay practices for EnerSafe employees. Cunningham has/had the power to hire and fire the employees, supervise and control employee work schedules and conditions of employment, determine the rate and method of payment, and maintain employment records.

29.    Cunningham may be served with summons at 2666 Kings Road, San Angelo, Texas 76904-7839.

*PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES – PAGE 6*

### G.    DEFENDANT JASON ANDERSON

30.    Anderson is subject to the FLSA individually and is an "Employer" under the FLSA. At times relevant, Anderson is/has been the Vice President of EnerSafe. Anderson has/had operational control over the day-to-day operations of EnerSafe.

31.    Anderson has the power to hire and fire employees, supervise and control employee work schedules and conditions of employment, determine the rate and method of payment, and maintain employment records.

32.    Anderson may be served with summons at 7700 San Felipe, Suite 490, Houston Texas 77063.

### H.    DEFENDANT RYAN MCMILLAN

33.    McMillan is subject to the FLSA individually and is an "Employer" under the FLSA. McMillan is/was the President of EnerSafe at times relevant.

34.    McMillan has/had operational control over the day-to-day business operations of EnerSafe. For example, McMillan dictates/dictated the operational practices and goals of EnerSafe. McMillan manages/managed key internal relationships for EnerSafe, including the selection of pay practices for EnerSafe employees. McMillan has/had the power to hire and fire the employees, supervise and control employee work schedules and conditions of employment, determine the rate and method of payment, and maintain employment records.

35.    Furthermore, on information and belief, McMillan was one of the leaders/decision makers in acts and omissions relative to the changes from EnerSafe to Gryphon aimed at avoiding liability in this lawsuit.

36.    McMillan may be served with summons at 7700 San Felipe, Suite 490, Houston, Texas 77063.

**I.    DEFENDANT BOBBY BENNETT**

37.    Bennett  is subject to the FLSA individually and is an "Employer" under the FLSA. Bennet was a manager for EnerSafe at times relevant to this lawsuit.

38.    Bennett has/had the power to hire and fire the employees, supervise and control employee work schedules and conditions of employment, determine the rate and method of payment, and maintain employment records.

39.    While, on information and belief, it is alleged that Cunningham, Anderson and/or McMillan were materially involved in the decision to terminate Hamilton's employment in retaliation for complaining about unpaid overtime wages, consulting a lawyer about unpaid overtime wages, and talking to his co-worker about a complaint for unpaid overtime wages, it was Bennet who signed the suspension and termination paperwork relative Hamilton related to Hamilton's FLSA retaliation claims.

40.    Bennett's location for service of summons is currently unknown.

**J.    DEFENDANT GRYPHON OILFIELD SERVICES**

41.    Gryphon is not registered to do business in the state of Texas. Gryphon advertises to the public that it is headquartered in Houston, Texas. While counsel for Plaintiffs have been unable to locate certificate of formation/incorporation documents for Gryphon, according the Texas Secretary of State, an entity named Gryphon Holdco, LLC applied to reserve that name (the "Application for Registration").

42.    The Application for Registration, dated July 1, 2016, lists the applicant as Ryan McMillan ("McMillan"), who is/was the president/CEO of EnerSafe, with an address of 7700 San Felipe, Suite 490, Houston, Texas 77063. That is the same address listed for EnerSafe in its

2015 Texas Franchise Tax Public Information Report (the "2015 PIR Report") filed with the State of Texas. The 2015 PIR Report listed McMillan as the CEO of EnerSafe.

43.     After this lawsuit was filed, EnerSafe entered an Answer. However, on or about August 24, 2016, the Court entered an order allowing EnerSafe's lawyers to withdraw from representation of EnerSafe. As of September 23, 2016, EnerSafe is without counsel and subject to default judgment.

44.     EnerSafe's counsel represented to counsel for Plaintiffs in approximately the summer of 2016 that EnerSafe was no longer operational, was being operated by a bank, and therefore was essentially in an unofficial receivership status. However, EnerSafe never filed or was forced into any bankruptcy proceedings, and no official receivership is known by Plaintiffs to exist as to EnerSafe.

45.     In actuality, the owners and officers of EnerSafe ceased doing business with the name EnerSafe, and instead began using the name Gryphon to do the same or substantially same work that EnerSafe did. Such work consisted primarily of $H_2S$ safety services and related work in oil and/or natural gas exploration, completion and/or production operations. On information and belief, this action was taken, potentially fraudulently, to attempt to avoid obvious liability in this lawsuit and other obligations to EnerSafe's creditors.

46.     On information and belief, EnerSafe simply changed its name to Gryphon, as opposed to the transaction being a merger or asset purchase. In that event, there is no related successor/predecessor liability issue in this lawsuit. Gryphon is responsible for the liabilities and obligations of EnerSafe as claimed due in this lawsuit.

47.     In the alternative, and to the extent that it is shown by EnerSafe and/or Gryphon that EnerSafe was merged with/into Gryphon, the Plaintiffs and the putative class members

allege that Gryphon assumed or is otherwise responsible/jointly responsible for the liabilities and obligations sought in this lawsuit relative to Defendants, or any of them. For example, Texas Business Organizations Code § 10.008(b) provides "if the plan of merger does not provide for the . . . allocation of any liability or obligation of any party to the merger, the … liability or obligation is the joint and several liability of, each of the surviving and new organizations, pro rata to the total number of surviving and new organizations resulting from the merger."

48.    In the alternative, and to the extent that it is shown by EnerSafe and/or Gryphon that Gryphon acquired EnerSafe via an asset purchase or similar transaction, then Gryphon is liable for the relevant damages claimed in this lawsuit pursuant to successor liability in connection with principles of federal employment law.

49.    First, there is substantial continuity between Gryphon and EnerSafe. As previously explained, it appears that EnerSafe simply changed its name to Gryphon. Gryphon performs substantially similar, if not identical business operations as EnerSafe. Gryphon uses pickup trucks in its business operations containing the EnerSafe logo, those pickup trucks being the same pickup trucks used by/owned by EnerSafe in its former business operations. The president/CEO of Gryphon is the same person who was the president/CEO of EnerSafe – McMillan. The business addresses listed for EnerSafe and Gryphon are the same - 7700 San Felipe, Suite 490, Houston, Texas 77063. The Gryphon Facebook page contains the following verbatim statement "EnerSafe – No Excuses…Just Solutions," congratulates employees of "EnerSafe as contest winners, and shows numerous EnerSafe vehicles and equipment operating at certain oilfield worksite locations.

50.    Furthermore, certain owners, officers, managers and employees of EnerSafe continued the same or similar work for Gryphon that they previously did for EnerSafe. For

example, in addition the president of both entities being McMillan, EnerSafe manager Bobby Bennet is also a manager for Gryphon. On information and belief, numerous other owners, offices, managers and/or employees of EnerSafe simply stopped work under the EnerSafe name and resumed that same work immediately with the Gryphon name.

51.     Gryphon had notice of potential liability for unpaid overtime wages and other damages sought in this lawsuit, the other lawsuits in this consolidated action, at the time of the change from EnerSafe to Gryphon. For example, as explained above, senior management for EnerSafe remained in their same jobs/roles after the name change to Gryphon. The knowledge of those EnerSafe owners, officers and managers, including CEO/president McMillan, of this lawsuit are imputed to the owners, officers and managers of EnerSafe. McMillan has been a named Defendant in this lawsuit sine it was filed on November 11, 2015. McMillan, and other EnerSafe officers/managers Cunningham and Anderson were parties to the Hamilton Case at all times. On information and belief, Cunningham and/or Anderson are officers/managers with Gryphon. Furthermore, the knowledge of the obligation to pay overtime compensation to Plaintiffs and the putative class members is imputed to Gryphon due to the continuity of ownership and management.

52.     On information and belief, namely derived from the representations of EnerSafe's former counsel, EnerSafe does not have the ability to provide the relief sought by the Plaintiffs and putative class members in this lawsuit. Furthermore, EnerSafe made the following judicial admission to this Court – "Enersafe has requested that counsel immediately stop preforming all work and services on the company's behalf. Enersafe has further informed Counsel that it will not compensate them for their past legal services." (ECF No. 34, ¶2). If EnerSafe cannot pay its lawyers for their work performed in this lawsuit, then it is axiomatic that it cannot satisfy the damages sought by Plaintiffs and the putative class members in this lawsuit.

53.     Finally, overall equity supports imposition of successor liability on Gryphon for the damages sought in this lawsuit against EnerSafe. It is unconscionable to allow a company and its owners to attempt to escape its legal obligations to Plaintiffs, the putative class members, and potentially other Defendants due to the doctrine of joint employers under the FLSA, by simply changing names, defunding/raiding EnerSafe and then falsely representing that EnerSafe just has no money to pay the damages sought in this lawsuit by Plaintiffs, and possible co-Defendants.

54.     Indeed, the conduct of the owners and officers of EnerSafe has the appearance of fraud, and Plaintiffs respectfully ask that the Court allow them to amend pleadings as necessary after the opportunity to conduct detailed discovery as to the acts and omissions of the owners and officers of EnerSafe and/or Gryphon.

55.     At all times relevant, Gryphon is and has been an "enterprise engaged in commerce" as defined by the FLSA.

56.     At all times relevant, Gryphon employed, and continues to employ, two or more employees who engaged in commerce. For example, Gryphon has, at all relevant times, had two or more employees engaged in work for other companies who perform interstate oil and natural gas exploration and production services.

57.     At all times relevant, Gryphon employed two or more employees who regularly handled and/or worked on goods and/or materials in their daily work that were moved in and/or produced for commerce by other people. Examples of such goods and/or materials include office equipment, such as vehicles, computers, computer related equipment, and communication devices. Other examples include a wide variety of safety related products, such as hydrogen sulfide gas monitors, gloves, clothing and personal protection equipment.

58.     On information and belief, at all times relevant, Gryphon has had annual gross sales or business volume in excess of $500,000.

59.    As Gryphon does not maintain a registered agent with the Texas Secretary of State, it may be served by serving the Texas Secretary of State. Alternatively, it may be served by serving its CEO/president, McMillan, at 7700 San Felipe, Suite 490, Houston, Texas 77063.

### K.    JURISDICTION AND VENUE

60.    The Court has personal jurisdiction over Defendants based on both general and specific jurisdiction.

61.    During all times relevant to this lawsuit, Defendants have done business in the State of Texas and continue to do business in the State of Texas.

62.    The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiffs base their claims on federal law, namely the FLSA.

63.    Venue is proper in the United States District Court for the Western District of Texas because a substantial part of the events giving rise to Plaintiffs' claims occurred, and continue to occur, in this judicial district.

64.    Venue is proper in the San Antonio Division of the United States District Court for the Western District of Texas because a substantial part of the events giving rise to Plaintiffs' claims occurred, and continue to occur, in the San Antonio Division.

### III.    FACTUAL BACKGROUND

65.    Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

66.    EnerSafe is in the business of providing energy safety products and workers to various companies such as EOG, Conoco Phillips, XTO Energy, Calumet Refining, EP Energy and others. Much of that work involved safety related manual labor relative to $H_2S$, or poison

gas, detection and protection. H$_2$S gas is frequently encountered in oilfield operations, such as those in and around the Eagle Ford Shale area of South Texas. Defendants sent Plaintiffs and the putative collective action members to those company job sites to perform their work.

### A.   JON HAMILTON

67.    In approximately August of 2013, TCSafety hired Hamilton as a H$_2$S Technician ("Technician"). Hamilton's duties included going to several job sites in order to set up safety equipment for third-party companies.

68.    Hamilton was paid a salary in addition to bonus type pay from EnerSafe. He was a W-2 employee of EnerSafe.

69.    While working for Defendants, Hamilton was supposed to work shifts of 21 days on and 7 days off. However, he frequently did not get all of the 7 days off. Hamilton was paid on salary basis in addition to other bonus type remuneration, regularly worked in excess of 40 hours in a workweek, but was never paid time and one-half his regular rate of pay for any hours worked over 40 in any workweek by Defendants. At times, Hamilton worked 24 hours straight, and then continued working into the next day.

70.    In October 2015, Hamilton expressed to a fellow co-worker that he recently learned that he and his colleagues should have been getting paid overtime. Hamilton told his co-worker that he had consulted with an attorney and considered suing EnerSafe and TCSafety to recoup his unpaid wages. Hamilton gave the co-worker his attorney's business card and told his co-worker to look into the matter, as he too was working well over the standard 40 hours per week without being paid any overtime compensation.

71.    The next day, on Friday, October 23, 2015, Hamilton's immediate supervisor at EnerSafe, Bennett, informed Hamilton that he was receiving a three-day "suspension" for not

doing his work properly in addition to other false allegations. This was Hamilton's first time ever be suspended during his long period of employment with EnerSafe. After the three-day "suspension" was over on Sunday, Hamilton did not hear back from EnerSafe between Monday to Wednesday of that week. However, on Thursday, October 29, 2015, EnerSafe told Hamilton to report to Bennet's office the following morning, as EnerSafe was going to fire him.

72.    As such, on October 30, 2015, Hamilton returned to EnerSafe to sign his discharge paperwork. Thus, what EnerSafe labeled as a "three-day suspension" was truly a week-long period for EnerSafe to get Hamilton's termination paperwork ready, as he had complained about not getting paid overtime, Defendants were aware he had met with a lawyer about suing them for unpaid overtime wages, and Defendants were aware that he had engaged in protected communications with co-workers about seeking unpaid overtime wages.

### B.    CODY GEORGE

73.    In August of 2013, TCSafety initially hired George as a $H_2S$ Technician – the same position that Hamilton was hired for in the same month. George's duties included going to several job sites in order to set up safety equipment. While working for TCSafety and EnerSafe, George worked a schedule of three weeks on and one week off or two weeks on and one week off, but sometimes did not get the full week off. Like Hamilton, George worked long daily hours, and it was common for him to work 24 hours straight, and then keep on working into the next day.

74.    George was paid on a salary basis and pursuant to a W-2 by EnerSafe until approximately February 2014. During that W-2 time period, George performed $H_2S$ Technician work for numerous customers of EnerSafe. During that W-2 time period, George was paid on a salary basis in addition to other bonus type pay, regularly worked more than 40 hours per seven

day workweek, but was not paid any overtime premium compensation for overtime hours worked.

75.    In February of 2014, George worked exclusively for EOG Resources, Inc. ("EOG") under EOG's sole control and direction. At that time, he was paid a day rate instead of a salary, but his paychecks were issued by EnerSafe. George was also issued 1099s at that time. Although he continued to regularly work in excess of 40 hours in his workweeks, George was still not paid overtime premium compensation for his overtime hours worked.

76.    In approximately June of 2015, EOG released George from work saying his services were no longer needed. Upon learning of this information, George contacted Anderson and Cunningham to see what his next job would be. However, George was ultimately told EnerSafe had no work for him. The reality was, when a 1099 worker, George was an employee of EOG, and EnerSafe, working as a de-facto payroll company, was his joint employer along with EOG.

## C.    <u>MARTIN W. KOLODZIRE</u>

77.    In approximately September of 2014, EnerSafe hired Kolodzire as a $H_2S$ Technician. Kolodzire's duties included going to several oilfield job sites in order to set up safety equipment for various customers of EnerSafe relative to $H_2S$ work. This work was manual in nature.

78.    Kolodzire was paid a salary in addition to other bonus type compensation by EnerSafe. He was a W-2 employee of EnerSafe.

79.    Kolodzire generally worked schedules of 14 days on, and seven days off. However, there were many occasions where he did not all of his days off.

80.    Typical of EnerSafe $H_2S$ Technicians, Kolodzire worked long hours. At times, he

worked 24 hours straight, and kept working into the next workday. Kolodzire regularly worked more than 40 hours in a seven day workweek, but was never paid time and one-half his regular rate of pay for any hours worked over 40 in any workweek.

**D.    COLLECTIVE FACTS**

81.    During the time period Plaintiffs were employees of EnerSafe, they worked with numerous other employees of EnerSafe who, like Plaintiffs were paid on a salary basis plus other bonus type pay, had the same or substantially similar job duties as Plaintiffs, regularly worked more than 40 hours in a workweek, but were not paid time and one-half their respective regular rates of pay for any hours worked over 40 in any workweek.

82.    EnerSafe did not make and keep a record of all of the data required by 29 C.F.R. § 516.2(a) in connection with the work performed by Plaintiffs.

83.    EnerSafe did not make and keep a daily and/or weekly record of the actual hours worked by Plaintiffs for EnerSafe.

84.    Defendants did not make and keep a record of all of the data required by 29 C.F.R. § 516.2(a) in connection with the work performed by Plaintiffs.

85.    Defendants did not make and keep a daily and/or weekly record of the actual hours worked by Plaintiffs for EnerSafe and/or Defendants.

**IV.    CONTROLLING LEGAL RULES**

86.    "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

87.    The FLSA generally requires that an employer employing an employee for a workweek exceeding 40 hours must compensate the employee for hours worked over 40 "at a rate not less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1).

88.     The "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e).

89.     With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009).

90.     Bona fide per diem payments which reflect "reasonable payments for traveling expenses, or other expenses incurred by an employee in furtherance of his employer's interests and properly reimbursable by the employer" may be excluded from the regular rate of pay. 29 C.F.R. § 778.216. "[O]nly the actual or reasonably approximate amount of the expense is excludable from the regular rate. If the amount paid as 'reimbursement' is disproportionately large, the excess amount will be included in the regular rate." 29 C.F.R. § 778.217(c).

91.     "The expenses for which reimbursement is made must in order to merit exclusion from the regular rate …, be expenses incurred by the employee on the employer's behalf or for his benefit or convenience. If the employer reimburses the employee for expenses normally incurred by the employee for his own benefit, he is, of course, increasing the employee's regular rate thereby. An employee normally incurs expenses in traveling to and from work, buying lunch, paying rent, and the like. If the employer reimburses him for these normal everyday expenses, the payment is not excluded from the regular rate as 'reimbursement for expenses.' Whether the employer 'reimburses' the employee for such expenses or furnishes the facilities (such as free lunches or free housing), the amount paid to the employee (or the reasonable cost to the employer or fair value where facilities are furnished) enters into the regular rate of pay… ." 29 C.F.R. § 778.217(d).

92.     Where the amount designated by the employer as a per diem allowance is not "reasonably approximated [to the employee's] reimbursable expenses," that per diem payment must be factored into the employee's regular rate of pay. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1035, 1041 (5th Cir. 2010).

93.     Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216.

94.     The FLSA recognizes the doctrine of joint employers. "Where an employee performs work that simultaneously benefits more than one employer, the concept of 'joint employment' imposes individual and joint FLSA liability on all employers." *Parker v. ABC Debt Relief, Ltd. Co.*, Civil Action No. 3:10-cv-1332-P, 2013 U.S. Dist. LEXIS 12859, at *13 - 20 (N.D. Tex. Jan. 28, 2013) (Solis, J.) (citing *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669-70 (5th Cir. 1968).

95.     Individual owners, officers and managers may be liable, along with corporate employer, for FLSA damages to employees. *See, e.g., Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012). ("The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies.")

96.     "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

97.     Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

98.     It is unlawful for "any person … to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]."  29 U.S.C. § 215(a)(3).

## V.      PLAINTIFFS' CLAIMS

99.     Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

100.    This action is authorized and instituted pursuant to the FLSA. 29 U.S.C. §§ 201, *et seq.*

101.    All conditions precedent to this suit, if any, have been fulfilled.

102.    At all material times, Plaintiffs and the putative collective action members are/have been employees of EnerSafe, Cunningham, Anderson, McMillan and/or Bennett pursuant to the FLSA. 29 U.S.C. § 203(e); *Wirtz*, 405 F.2d at 669-70; *Gray*, 673 F.3d at 357.

103.    Alternatively, EnerSafe, Cunningham, Anderson, McMillan and/or Bennett, EnerSafe are/were joint employers of Plaintiffs and the putative collective action members. 29 U.S.C. § 203(e) & (d); *Wirtz*, 405 F.2d at 669-70; *Gray*, 673 F.3d at 357.

104.    At all material times, EnerSafe has been an eligible and covered employer of Plaintiffs and the putative collective action members pursuant to the FLSA. 29 U.S.C. § 203(d).

105.    At all material times, Cunningham has been an eligible and covered employer of Plaintiffs and the putative collective action members pursuant to the FLSA. 29 U.S.C. § 203(d).

106.    At all material times, Anderson has been an eligible and covered employer of Plaintiffs and the putative collective action members pursuant to the FLSA. 29 U.S.C. § 203(d).

107.    At all material times, McMillan has been an eligible and covered employer of Plaintiffs and the putative collective action members pursuant to the FLSA. 29 U.S.C. § 203(d).

108.    At all material times, Bennett has been an eligible and covered employer of Plaintiffs and the putative collective action members pursuant to the FLSA. 29 U.S.C. § 203(d).

109.    At times material times, Gryphon has been an eligible and covered employer pursuant to the FLSA. 29 U.S.C. § 203(d).

110.    Gryphon is liable, in whole or in part, for the FLSA damages sought against EnerSafe in this lawsuit by Plaintiffs and the putative collective action members.

111.    Plaintiffs and the putative collective action members routinely worked in excess of 40 hours per seven-day workweek for Defendants in the time period relevant to this lawsuit.

112.    At all material times, Plaintiffs and the putative collective action members are and/or were entitled to overtime compensation from Defendants at one and one-half times their respective regular rates of pay. 29 U.S.C. § 207(a)(1).

113.    Defendants failed to pay Plaintiffs and the putative collective action members overtime compensation at one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit.

114.    EnerSafe did not maintain an accurate number of the daily and weekly hours worked by Plaintiffs and the putative collective action members during the relevant time period to this lawsuit. 29 C.F.R. § 516.2(a).

115.    Defendants' violations of the FLSA are and were willful within the meaning of 29 U.S.C. § 255(a). *See Singer v. City of Waco*, 324 F.3d 813, 821-22 (5th Cir. 2003) (upholding a jury finding of willfulness). Plaintiffs and the putative collective action members specifically plead recovery for the time period of three years preceding the date this lawsuit was filed and forward for their FLSA claims.

116.    Plaintiffs and the putative collective action members seeks all damages available for Defendants' violations of the FLSA. Plaintiffs and the putative collective action members seek all damages available against Gryphon.

117.    EnerSafe, Cunningham, Anderson, McMillan and/or Bennett violated the FLSA's anti-retaliation provision as to Hamilton. Hamilton seeks all damages available from Defendants, or any of them, for FLSA retaliation.

118.    The FLSA Collective Action Class for which Plaintiffs seek certification are all current and/or former employees of EnerSafe who are similarly situated to Plaintiffs who (a) are/were paid on a salary basis in addition to other remuneration, such as bonuses; (b) had/have primary job duties/titles of oilfield safety technicians, advisors and/or consultants; (c)

work/worked more than 40 hours in any workweek; and (d) are/were not paid time and one-half their regular rate of pay for all hours worked over 40 in each such workweek by EnerSafe.

119.    Gryphon is liable, in whole or in part, for the damages sought from EnerSafe in this lawsuit for Plaintiffs and the putative collective action members.

120.    The FLSA collective action class in this particular lawsuit does not include workers paid by EnerSafe pursuant to 1099s, but only as to time periods they were paid by 1099s.

121.    All of the FLSA collective action Plaintiffs, opt-in Plaintiffs and putative collective action members are similarly situated to Plaintiffs, and to one another, within the meaning of Section 216(b) of the FLSA.

122.    Plaintiffs reserve the right to refine the definition of the FLSA collective action class pursuant to amended pleadings, conditional certification/decertification proceedings, or as otherwise allowed by the Court.

123.    Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis. *See Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (certifying nationwide collective action in FLSA case); *see also*, *Jones v. SuperMedia Inc.,* 281 F.R.D. 282, 290 (N.D. Tex. 2012) (same).

## VI.   <u>JURY DEMAND</u>

124.    Plaintiffs demand a jury trial.

## VII.      <u>DAMAGES AND PRAYER</u>

125.    Plaintiffs ask that summons be issued and that they be awarded a judgment against EnerSafe, Cunningham, Anderson, McMillan, Bennett and/or Gryphon for the following:

a) Actual damages in the amount of unpaid overtime wages;

b) Liquidated damages;

c) All damages allowed for violations of the FLSA's anti-retaliation provision (Hamilton only);

d) Certification of Plaintiffs' FLSA overtime causes of action as a collective action with the requirement of notice of this lawsuit being provided to the putative collective action members;

e) A finding that Gryphon is liable, in whole or in part, for EnerSafe's liability to Plaintiffs and the putative collective action and/or class members in this lawsuit;

f) Post-judgment interest on the FLSA claims;

g) Costs;

h) Reasonable attorney's/attorneys' fees; and

i) All other relief to which Plaintiffs and the putative collective action members are justly entitled.

Respectfully submitted,


By:    s/ Allen Vaught                        
Allen R. Vaught
TX Bar No. 24004966
MS Bar No. 101695
avaught@baronbudd.com
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas  75219
(214) 521-3605 – Telephone
(214) 520-1181 – Facsimile

Glenn D. Levy
Texas Bar No. 12264925
Law Office of Glenn D. Levy
906 Basse Road, Suite 100

San Antonio, Texas 78212
Telephone: (210) 822-5666
Facsimile: (210) 822-5650
glenn@glennlevylaw.com

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

On September 23, 2016, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically.

s/Allen R. Vaught
Allen R. Vaught